```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

DIRECTV, Inc.                    :
                                 :
v.                               :      No. 3:03cv918   (JBA)
                                 :
Thomas Neznak                    :


**RULING ON MOTION FOR DEFAULT JUDGMENT [Doc. # 14]**

Following entry of default on October 19, 2004, plaintiff DIRECTV, Inc. has moved for default judgment, seeking $50,000 in statutory damages, injunctive relief, and attorneys fees and costs.  There have been no appearances or motions to set aside filed by or on behalf of defendant.  For the reasons discussed below, plaintiff's motion [Doc. # 14] is GRANTED in part and DENIED in part.

**I.  Background**

Plaintiff DIRECTV, Inc. is a direct broadcast satellite system delivering television and other programming to homes and businesses.  In order to provide security and prevent unauthorized viewing of its satellite television programming, DIRECTV encrypts its satellite transmissions, and provides its customers with a DIRECTV Access Card and other hardware to view the programming in a descrypted format.  In its complaint, DIRECTV alleges that on or about March 9, 2001, defendant Thomas Neznak purchased from Vector Technologies two devices known as "Vector Smart Card Emulators," and purchased another "Vector

1

Smart Card Emulator" on April 6, 2001.  On May 23, 2001, plaintiff alleges that defendant purchased two "Vector Smart Card Emulator" devices and one "Vector Super Unlooper with SU2 Code" device.  Defendant alleges that these devices are Pirate Access Devices specifically designed to illegal modify DIRECTV Access Cards, and that defendant used these devices to intentionally intercept and use DIRECTV's television signals without authorization and without payment to DIRECTV.

> DIRECTV further alleges as follows:
>
> In the alternative and/or in addition thereto, the Defendant assisted third parties in obtaining DIRECTV's signals without authorization and without payment by distributing six (6) Pirate Access Devices to third parties, knowing or having reason to know, that the items distributed were primarily of assistance in the unauthorized interception or reception of the Plaintiff's satellite television programming; and/or
>
> In the alternative and/or in addition thereto, the Defendant re-programmed DIRECTV Access Cards and/or attached or connected DIRECTV Access Cards or modified DIRECTV Access Cards with or to the other Pirate Access Device reference above thereby modifying, assembling or manufacturing six (6) Pirate Access Devices knowing, or having reason to know that the devices would be primarily of assistance in the unauthorized interception or reception of the Plaintiff's satellite television programming.

Complaint [Doc. # 1] at ¶¶ 23-24.

**II. Discussion**

    **A. Liability**

DIRECTV argues that in view of defendant's default, the allegations in its complaint are sufficient to establish

defendant's liability under 47 U.S.C. § 604(a),[1] 47 U.S.C. § 605(e)(4),[2] and 18 U.S.C. § 2511(1)(a), which is subject to a private right of action under 18 U.S.C. §2520(a).[3] See DirecTV Inc. v. Nicholas, 403 F.3d 223, 228 (4th Cir. 2005).  While the court agrees that it is reasonable to infer that defendant has used the Vector emulator and unlooper devices to intercept and receive DIRECTV's signals without authorization in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), given the absence of legitimate use for such devices, the allegations in DIRECTV's complaint are insufficient to demonstrate that defendant distributed or modified the technology.  A default is an admission of all well-pleaded allegations against the defaulting party.  See, e.g., Vermont Teddy Bear Co., Inc. v. 1-800 Beargram

---

[1] Section 605(a) provides that ". . . [n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto . . ."

[2] Under Section 605(e)(4), a person violates the Communications Act if he/she:
> manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section . . .

[3] Under 18 U.S.C. § 2511(1)(a), an individual who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" violates the statute.

Co., 373 F.3d 241, 246 (2d Cir. 2004). DIRECTV's allegations, however, are pled "in the alternative," and DIRECTV has presented no factual basis other than defendant's mere purchase of the devices from which to conclude that the devices were distributed or modified. Plaintiff argues that it can be inferred that only one of the five emulators that defendant purchased, and the one unlooper that defendant purchased, were retained for personal use, and that therefore the Court should infer that defendant distributed the four emulators in excess of personal need. The purchases, however, over a three month period, may equally suggest personal use with multiple television sets in the home, or a malfunction in an existing device. This case is far removed from Cablevision Systems Corp. v. DePalma, No. CV-87-3528, 1989 WL 8165, at *3 (E.D.N.Y. Jan 17, 1989), in which the court inferred that the defendant sold pirate access devices after hearing evidence at a bench trial that the defendant purchased 178 converter/decoders over a two month period at a total cost of $19,143.25 from an adjudged cable pirate.

While plaintiff's complaint alleges that the Vector Smart Car Emulator and Super Unlooper are devices "specifically designed to illegally modify DIRECTV Access Cards," Complaint [Doc. # 1] at ¶ 20, the Court concludes that the mere use by a consumer of such a device is not "modification" of a pirate access device within the meaning of § 605(e)(4). As several district courts have recognized, section 605(e)(4), which

addresses the manufacture, assembly, modification, import, export, sale, and distribution of pirate access devices, is aimed at "upstream manufacturers and distributors, not the ultimate consumer of pirating devices." Directv, Inc. v. Albright, No. 03-4603, 2003 U.S. Dist. LEXIS 23811, at *7 (E.D.Pa. December 9, 2003); DIRECTV, Inc. v. Borich, No. 1:03-2146, 2004 WL 2359414, at *3 (S.D. W.Va. Sept. 17, 2004); DirecTV, Inc. v. McDougall, SA-03-CA-1165, 2004 WL 2580769, at *3 (W.D. Tex. Nov. 12, 2004). Reading § 604(e)(4) as broadly as plaintiffs urge would render § 605(a) superfluous, since any use of a pirate access device to intercept satellite signals would also be deemed "modification" of DIRECTV's hardware. Given the heightened penalties for violations of § 605(e)(4), this Court concludes that Congress intended in that section to penalize manufacturers and distributers, not mere consumers of pirate access devices. The allegations in plaintiff's complaint are insufficient to establish that defendant violated subsection (e)(4).

### B.  Damages and Injunctive Relief

Plaintiff seeks the minimum statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), which provides:

> the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

5

In view of the foregoing, the Court finds that defendant's purchase of five emulators and one unlooper supports an inference of six separate violations of § 605(a), and the Court accordingly awards $6000 in statutory damages.  The Court also permanently enjoins defendant from receiving or using any pirate access device to intercept satellite communications signals, or engaging in any further violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511.[4]

Defendant also seeks statutory damages under 18 U.S.C. § 2520(c)(2)(B) for the violation of § 2511(1)(a).  Section 2520(c)(2)(B) provides that a district court "may assess as damages whichever is the greater of- (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."  DIRECTV has not presented evidence of the actual damages suffered, and there is no basis for finding that the defendant profited from the violation.  Nor is there any evidence of the duration of defendant's actual use of the devices to intercept DIRECTV's communications, making calculation of statutory damages "for each day of violation" speculative.  The statutory damage award of $10,000, therefore, is the presumptive

---

[4] 47 U.S.C. § 605(e)(3)(B)(I) provides that the "court may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section."  18 U.S.C. § 2520(b)(1) similarly provides for injunctive relief.

amount at issue.

An award of statutory damages under § 2520(c)(2)(B) is discretionary. See Dorris v. Absher, 179 F.3d 420, 429 (6th Cir. 1999) (holding that "the plain language of the statute compels the conclusion that the district courts have the discretion to decline the imposition of damages," and noting that when Congress amended the statute in 1986, it "expressly changed the verb from a mandatory form to a permissive one."); Reynolds v. Spears, 93 F.3d 428, 435 (8th Cir. 1996) ("We think it logical that Congress chose to make the award of [statutory] damages discretionary, given the potential of the law to bring financial ruin to persons of modest means, even in cases of trivial transgressions."). Several district courts, confronted with similar claims brought under both 47 U.S.C. § 605 and 18 U.S.C. § 2511, § 2520, have declined to award the § 2520 statutory damages. See DirecTV, Inc. v. Perrier, No. 03-CV-400S, 2004 WL 941641, at *4 (W.D.N.Y., Mar. 15, 2004) (exercising discretion to award no statutory damages under § 2520 in light of absence of evidence that defendant significantly profited from his violations of statute or induced others to engage in similar misconduct, and because damages were award under 47 U.S.C. § 605); DirecTV, Inc. v. Kaas, 294 F.Supp.2d 1044, 1049 (N.D. Iowa, 2003)(finding $10,000 award excessive). But see DirecTV v. Meinecke, No. 03 Civ.3731 JGK GWG, 2004 WL 1535578 (S.D.N.Y., July 9, 2004) (exercising discretion to award $10,000 statutory damages in case where

7

plaintiff sought damages only under 18 U.S.C. § 2520). This Court concludes that the $6000 statutory damages awarded pursuant to 47 U.S.C. § 605 adequately punishes the defendant for his illegal actions, compensates DIRECTV for any losses, and provides a sufficient deterrent to others. In this context, an additional statutory damages award under 18 U.S.C. § 2520 would be excessive, particularly since the underlying conduct punished by this provision is identical to that covered by 47 U.S.C. § 605. Accordingly, this Court exercises its discretion to award no statutory damages under § 2520.

### C. Attorney's Fees and Costs

Under 47 U.S.C. § 605(e)(3)(B)(iii), a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff seeks attorneys fees of $755.00, which includes 2.2 hours of counsel's work, and 3.5 hours that a paralegal spent preparing the complaint, motions, and memorandum of law in this case, at $200 and $90.00 per hour, respectively. The Court finds both the number of hours worked and the hourly rates to be reasonable, and therefore awards plaintiff the full $755.00 requested.

## III. Conclusion

For the foregoing reasons, plaintiff DIRECTV's motion for default judgment is GRANTED in part and DENIED in part. Plaintiff is awarded the sum of $6,000 in damages and $755 in

attorney fees and costs against the defendant Thomas Neznek. The Clerk of Court is directed to enter judgment accordingly, and close this case.

IT IS SO ORDERED.

_____          _____
                                    Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut:**   **May 10, 2005**